IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID MCDONALD HEATH,

                Petitioner,          Civil No. 07-669-TC


              v.                     FINDINGS AND
                                     RECOMMENDATION
JEAN HILL,

                Respondent.


COFFIN, Magistrate Judge.

    Petitioner is in the custody of the Oregon Department of
Corrections pursuant to Judgments of Conviction and Sentence
dated June 4, 1999, from Jackson County Circuit Court Case No.
982542-A-FE and 983474-A-FE, after convictions for Burglary in
the First Degree (three counts), Assault in the Third Degree
(one count), Robbery in the First Degree (three counts), and
Assault in the Second Degree (one count).[1]  Following a jury

---

[1]Petitioner and a female companion, Neva Honeycutt, were
charged and tried for two home invasion robberies that occurred a
month apart.  The charges against petitioner were consolidated for

1 - FINDINGS AND RECOMMENDATION

trial, petitioner was sentenced to 277 months in prison. Respondent's Exhibit 101. Petitioner was sentenced to a total of 27 months for his convictions in 98-2542-A-FE (the Wilkes/DiFillippo case). The remainder of petitioner's sentence was imposed for convictions in 98-3474-A-FE (the Cameron/Davis case).

Petitioner directly appealed his convictions. The Oregon Court of Appeals affirmed from the bench and the Oregon Supreme Court denied review. Exhibits 105-110.

Petitioner's amended petition for post conviction relief, Exhibit 111, was denied by the Umatilla County Circuit Court. Exhibit 161.[2] The Oregon Court of Appeals affirmed without opinion, Exhibit 169, and the Oregon Supreme Court denied review. Exhibit 168. Petitioner filed a pro se petition for habeas corpus relief under 28 U.S.C. § 2254 alleging two claims of trial court error and 16 grounds of ineffective assistance of counsel. Petition (#2).

Respondent moves to deny habeas relief and dismiss this proceeding on the grounds that petitioner's claims of trial court error were not properly exhausted and defaulted; the post-conviction court decisions on petitioner's claims of ineffective assistance of counsel are entitled to deference under § 2254(d)(1); and petitioner's claims of ineffective

_____

trial.

[2]Based on "Findings & Conclusions on the Record." Exhibit 161, p. 1

assistance of counsel lack merit.  Response (#25) p. 31-32.

Claims of trial court error (Grounds A and B):  Petitioner's

pro se petition alleges two claims of trial court error in

Case No. 98-2542-A-FE.

By Order (#7) entered June 11, 2007, counsel was

appointed to represent petitioner in this proceeding.

Petitioner's attorney has not presented any evidence or

argument in support of Grounds A and B or responded to

respondent's argument that the claims of trial court error

were not exhausted and procedurally defaulted.

Respondent's un-controverted exhibits and argument

establish that petitioner's claims of trial court error

alleged in Grounds A and B were not properly presented to the

Oregon Supreme Court and defaulted because they were un-

preserved and not plain error.  See, Response to Habeas Corpus

Petition (#25) p. 14 - 16.

Petitioner's Claims of trial court error (Grounds A and

B) should be denied.

Claims at issue in this case:

A.)  Exhaustion of state remedies:  Respondent acknowledges

that "[t]he ineffectiveness claims were fairly presented to

the Oregon Supreme Court."  Response to Habeas Corpus Petition

(#25), p. 16.  In Respondent's Reply (#40) respondent alleges

that the "parties agree that the         argued  claims  of

ineffectiveness found in the      pro  se  application  were

exhausted."  Id. p. 4.

The parties' designation and re-designation of the ineffective assistance of counsel claims is confusing and does not precisely track the claims and arguments made at the PCR proceeding. In addition some of the ineffectiveness claims have been combined for purposes of argument. Memorandum of Law in Support of Petition (#38) p. 3, fn. 1.

I have reviewed the individual claims alleged in the pro se Petition (#2) and compared them to the grounds for relief alleged in the petitioners amended PRC petition and issues argued at the PRC trial and find that petitioner's claims of ineffective assistance of counsel alleged in this proceeding are properly exhausted for purposes of habeas corpus review.

B.) <u>Claims not traversed:</u>  Respondent argues that certain claims alleged in petitioner's petition are not argued in petitioner's Supporting Memorandum and should be denied as not traversed pursuant to 28 U.S.C. § 2248 and <u>Renderos v. Ryan</u>, 469 F.3d 788, 800 (9th Cir. 2006), *cert. denied* 2007 Lexis 8289 (U.S., June 25, 2007).

The requirement of a "traverse" has been eliminated by the 2004 amendments to the Rules Governing Section 2254 Cases. Moreover, petitioner has expressly *not waived* the un-argued claims. <u>See</u>, Argument in Surreply (#43) p. 4.

As noted above, some of petitioner's claims have been combined for purposes of argument. I have carefully reviewed the briefing and find that all of petitioner's ineffective assistance of counsel claims are at issue in this case whether

or not specifically or individually argued by petitioner.

C.)    <u>Claims    based    on    Case    No.    9802542-A-FE    (the
"Wilkes/DiFillippo" incident)</u>:    Petitioner's pro se petition
alleges two claims of ineffective assistance of counsel based
on his convictions for Burglary in the First Degree with a
Firearm and Assault in the First Degree in case No. 982542-A-
FE.

Petitioner has not submitted any evidence or argument in
support of those claims.    Petitioner's "Summary of Argument"
alleges   that   his   trial   counsel   was   "[c]onstitutionally
ineffective in regard to the second case," [<u>ie</u>., 98-3474-A-FE,
the "Cameron/Davis" incident].  Memorandum of Law #38, p. 3.
However, because petitioner alleges that he does not intend to
waive any claims alleged in his petition, the court has
considered these un-argued claims and finds as follows.

In "Ground A" petitioner alleges:   "Defense counsel was
ineffective when he failed to object to the 'menacing' theory
on the burglary charge."   Petition (#2), p. 3.

Count V of the Indictment alleged that petitioner entered
the DiFillippo residence "with the intent to commit the crime
of menacing."   Exhibit 102, p. 3.   The court instructed the
jury on the meaning of "menacing." There was no basis for
petitioner's attorney to object, and the post-conviction court
found that counsel was not ineffective for failing to do so.
Exhibit 160, p. 74-75.   That finding is entitled to deference
under 28 U.S.C. § 2254(d)(1) because it is not contrary to,

nor an unreasonable application of clearly announced Supreme Court law.  Moreover the finding is supported by the record before the court.

In "Ground B" petitioner alleges that counsel was ineffective "when he failed to object to the trial court amending the charge during jury instructions, which broadened the basis for conviction allowing the jury to consider an un-pled theory."  Petition (#2) p. 4.

The post-conviction court found that there was "nothing improper about that and no reason for the attorney to object." Exhibit 160, p. p. 75.  The post conviction court finding is entitled to deference under § 2254(d)(1), and is supported by the record.

Petitioner apparently argues that Count V of the indictment stated that the charge was Burglary in the First Degree with a Firearm but the body of the indictment did not allege that petitioner entered the residence to commit a crime "while armed with a firearm."  See, Respondents Exhibit 117, Memorandum of law in Support of Post-Conviction, p. 6-8, and Respondent's Exhibit 163, Appellant's Supplemental Pro Se (PCR) Brief, p. 1.

The court instructed the jury that in order to find petitioner guilty of the charge he must have had a firearm. There was no reason to object to the jury instruction because ORS 161.610(2) only requires the state to plead the firearm enhancing factor in the title, and not in the body of the

indictment..

Based on the foregoing, petitioner's claims of ineffective assistance of counsel in Case No. 982542-A-FE should be denied.

Claims based on Case No 983474-A-FE (the "Cameron/Davis" incident): Petitioner alleges twelve claims of ineffective assistance of counsel in regard to the "second case" (ie. 983474-A-FE, the "Cameron/Davis incident"). Petition (#2) p, 4-7. Some of the claims have been combined for argument. See, Memorandum of Law (#38) p. 3, fn. 1. As noted above, I find that all of petitioner's ineffective assistance claims arising out of the Cameron/Davis incident are exhausted and properly before the court.

Respondent contends that the post-conviction court's decision denying petitioner's claims is entitled to deference under 28 U.S.C. § 2254(d)(1) and (2) since it was not contrary to, nor an objectively unreasonable application of clearly established Supreme Court law, or based on an unreasonable factual determination. Reply to Memorandum of law #40) P. 2.[3]

Standards: Petitioner's federal habeas petition was filed after April 24, 1996, and is therefore governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Woodford v. Garceau, 538 U.S. 202, 210 (2003). Under AEDPA, habeas relief may be granted only when a state

_____

[3]The PCR court issued its opinion from the bench in a rather summary fashion, addressing some, but not all of petitioner's specific allegations. See, Exhibit 160 at p. 74 - 81.

court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings." 28 U.S.C. § 2254(d); <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing <u>Bell v. Cone</u>, 535 U.S. 685, 694. The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000).

The Supreme Court has held that "[i]t is past question that the rule set forth in <u>Strickland</u>, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Williams v Taylor</u>, <u>supra</u> at 391. Under <u>Williams</u>, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, a claim that counsel's assistance was

so ineffective as to require reversal of a conviction has two components.  First, the petitioner must show that counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense.  <u>Id</u>. at 687.

The first (deficient performance) prong of the <u>Strickland</u> test requires the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness" that is "outside the wide range of professionally competent assistance." <u>Strickland</u>, <u>supra</u> at 688, 690. The court evaluates "the conduct from counsel's perspective at the time" to "eliminate the distorting effects of hindsight," and should be "highly deferential" in judging counsel's performance, affording counsel a strong presumption of adequacy. <u>Id</u>, at 869.

The second (prejudice) component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    A reasonable probability is one that is sufficient to undermine confidence in the outcome." <u>Id</u>. 694.  "It is clear ... that [petitioner] *need not* show that [counsel's] deficient conduct more likely than not altered the outcome in the case.  This 'preponderance' standard was explicitly rejected in <u>Strickland</u>." <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1461 (9th Cir. 1994) (citing <u>Strickland</u>, 466 U.S. at 693 (enphasis in

original).

<u>Background:</u>    An overview of the relevant facts is as follows.

Petitioner and a co-defendant, Neva Honeycutt were jointly tried on charges that they perpetrated two separate home-invasion robberies. Petitioner did not dispute that he was with Ms. Honeycutt during the first robbery [hereinafter the "Wilkes/DiFillippo" robbery].[4]

At the time of the second robbery [hereinafter the "Cameron/Davis" robbery], authorities had identified petitioner and Honeycutt as the suspects in the Wilkes/DiFillippo robbery.  Shortly after he was arrested, petitioner admitted to a detective that he was involved in the Wilkes/DiFillippo robbery but denied involvement in the Cameron/Davis robbery. Petitioner advised investigators that they should look for someone named "Jimmy."

Both victims initially were unable to identify petitioner as a participant in the Cameron/Davis robbery.  Mr. Cameron eventually picked petitioner from the third photographic array presented to him approximately 5 months after the robbery, and identified petitioner in court.  Ms. Davis never identified petitioner as the perpetrator.

The prosecutor moved to consolidate the trial of the

---

[4]Although petitioner was charged with Robbery in the First Degree in the Wilkes/DiFillippo case, he was ultimately convicted of Burglary in the First Degree and Assault in the Third Degree in that case.

Wilkes/DiFillipo and Cameron/Davis cases. Counsel for Honeycutt objected, but petitioner's counsel did not. The court granted the prosecutor's motion.

Discussion: The state and petitioner's counsel agreed that the "identity of the male robber in the [Cameron/Davis case] was the key issue for the jury to decide." Exhibit 157 at p. 2.

The crux of petitioner's argument in this proceeding that the state "bootstrapped" petitioner's acknowledged participation in the Wilkes/DiFillippo robbery into a faulty conclusion that petitioner was the male intruder in the Cameron/Davis robbery and that petitioner's counsel was constitutionally deficient for failing to prove - or at least raise a reasonable doubt, to the contrary.

Petitioner's claims are summarized as follows:

"[Counsel] failed to challenge the impermissibly suggestive pretrial identifications procedures, failed to seek suppression of the tainted and unreliable in-court identification; failed to discover and introduce evidence that another man committed the second robbery with Honeycutt; failed to proffer expert evidence on identification or seek jury instructions on that central issue; and failed to call a medical expert concerning the elderly eye-witnesse's inability to meaningfully observe his attacker. Counsel was also ineffective in failing to object to the prosecutor's closing argument urging the jury to treat the cases together, and in failing to request the pattern jury instruction and a case specific instruction advising the jury to consider each defendant and case separately.

Memorandum of Law (#38) p. 3.

1.) Photo identification issues: Petitioner's counsel acknowledged that the identity of the male robber in the Cameron/Davis incident was a "key issue" for the jury to

11 - FINDINGS AND RECOMMENDATION

decide, Respondent's Exhibit #157, p. 2.

Petitioner argues that counsel was ineffective for failing to challenge the pretrial identification procedure at a "Wade Hearing" and not seeking to suppress Mr. Cameron's in-court identification of petitioner. Memorandum of Law (#38) p. 28.[5]

Convictions based on in court identification by photograph will be set aside where the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Simmons v. United States, 390 U.S. 377 (1968); United States v. Barrett, 703 F.2d 1076, 1084 (9th Cir. 1983).

A pre-trial identification procedure is suggestive when it "emphasize[s] the focus upon a single individual" thereby increasing the likelihood of misidentification. United States v. Montgomery, 150 F.3d 983, 992 (9 th Cir. 1998), quoting United States v. Bagley, 772 F.2d 482, 493 (9th Cir. 1985); United States v. Hanigan, 681 F.2d 1127, 1133 (9th Cir. 1982), cert. denied 459 U.S. 1203 (1983). For example, the repeated showing of the picture of an individual reinforces the image

---

[5]Petitioner does not specifically identify or define a "Wade Hearing" and none of the cases cited by petitioner refer to a "Wade Hearing." In the United States v. Wade, 388 U.S. 218 (1966), the Supreme Court stated that the "appropriate procedure to be followed" when a pre-trial line-up has been found to be impermissibly suggestive is "to vacate the conviction pending a hearing to determine whether the in-court identification had an independent source." Wade, supra at 242. Presumably petitioner refers to a hearing to determination whether arguably tainted identification is independently reliable.

of the photograph in the mind of the viewer. <u>Simmons v. United States</u>, 390 U.S. at 383.

Even if there is some suggestiveness in a photographic-spread identification, an in court identification may be sufficiently reliable to justify it's admission. As noted by the court in <u>Barrett</u>, "[t]he reliability of an in-court identification is the linchpin in determining it's admissibility." <u>United States v. Barrett</u>, 703 F.2d at 1085, *citing*, <u>Manson v Brathwaite</u>, 432 U.S. 98 (1977); <u>United States v. Field</u>, 625 862, 866 (9th Cir. 1980).

The Supreme Court has identified five factors among the totality of the surrounding circumstances that a court should consider in assessing the reliability of the identification testimony. They are:

1. the opportunity of the witness to view the criminal at the time of the crime,

2. the witness' degree of attention,

3. the accuracy of the witness' prior description of the criminal,

4. the level of certainty demonstrated by the witness at the [pre-trial] confrontation, and

5. the length of time between the crime and the [pre-trial] confrontation.

<u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972); <u>United States v. Field</u>, 624 F.2d at 866. These five indicia of reliability are to be balanced against the corrupting effect of the

13 - FINDINGS AND RECOMMENDATION

suggestive pretrial identification procedure to determine whether the in-court identification should have been admitted. Manson v. Brathwaite, 432 U.S. at 114; United States v. Field, 625 F.2d at 866; United States v. Barrett, 703 F.2d at 1085; United States v. Hanigan, 681 F.2d at 1133.

A suggestive pretrial identification taints a subsequent in-court identification and due process requires its exclusion unless the prosecution establishes an independent source for the identification, United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984). However, an impermissibly suggestive pretrial identification does not automatically require the exclusion of identification testimony. U.S. v. Bagley, supra at 492 (citing Manson v. Brathwaite, 432 U.S. 98; and Biggers, 409 U.S. at 198-99. "If under the totality of the circumstances the identification is sufficiently reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure." Id.

Petitioner's counsel submitted an affidavit in the PCR proceeding which stated inter alia: "I had no legal basis to move to suppress the victim's in-court identification or prior photo throw down of petitioner." Respondent's Exhibit 157 at p. 3. However, the issues discussed below indicate that counsel had ample reason and legal basis to seek suppression of Mr. Cameron's identification of petitioner and that competent counsel would have done so.

The record reflects that on June 11, 1998, the day after
the Cameron / Davis robbery, two detectives interviewed Mr.
Cameron at the hospital.  The detectives showed Mr. Cameron a
photographic array of 6 males - including a photograph of
petitioner.  See, Petitioner's Exhibit 120.  Petitioner's
photograph is #5.[6]  Mr. Cameron was unable to pick out a
suspect. Petitioner's Exhibit 149, p. 52-53; Tr. 174-175.

On June 19, 1998, Detective Wright showed Mr. Cameron six
police artist sketches.  Petitioner's Exhibit 122.  [7]  The
sketches included one of petitioner and five of other males
having "similar characteristics" as petitioner.  Petitioner
could not identify any of the sketches "as that of his
attacker." Petitioner's Exhibit 149, p. 16 see also, Tr. 180-
181. The police artist sketches were not displayed to the jury
or admitted into evidence at petitioner's trial.  They were
however, introduced into evidence in petitioner's PCR
proceeding. Petitioner's Exhibit 122 at 1 - 6.

On November 17, 1998, Detective Wright showed Mr. Cameron
a photographic array of six men. Petitioner Exhibit 123.  The

---

[6]At petitioner's trial the prosecution introduced five
separate copies of the photographic arrays depicting petitioner.
Tr. 57, 80, 82, 124-125, 176-176, 207. Four versions of the exhibit
were the identical photographic array of petitioner with a beard.
Petitioner's Exhibit 150 at 4, 6, 14, 25 and 25.  Of these, three
were arrays that had resulted in petitioner being identified by
witnesses from the Wilkes/DiFillippo incident.  Petitioner Exhibit
150 at 4, 6 and 14.   Each of the exhibits contained handwritten
notations of the witnesses that identified petitioner as "#5."

[7]The sketch of petitioner is the one numbered "5."Petitioner's
Exhibit 149, p. 16.

15 - FINDINGS AND RECOMMENDATION

array included "a copy of Mr. Heath's booking photograph along with photographs of other similar looking males." Exhibit 114, p. 5; see also, Tr. 205. Mr. Cameron identified petitioner as the "male that robbed him." Exhibit 114, p. 6. Petitioner's photo is "in the lower, right corner of the lineup." Id.

Timing is a factor to consider in assessing the reliability of eye-witness identification. Mr. Cameron was unable to pick petitioner out of arrays presented to him the day after, and nine days after the incident. However, 180 days after the incident Mr. Cameron choose the image of petitioner.[8]

As noted above, a pre-trial identification is suggestive when it emphasizes the focus on a single individual, for example, by repeatedly showing a photo or image of the person. Simmons v. United State, supra.

Only petitioner was represented in all three arrays shown to Mr. Cameron. Compare, Petitioner's Exhibits 120, 122 and 123.    No one else was repeated in even two of the arrays. Id.

The first photographic array used by police contained a paragraph with admonitions intended to protect against unreliable identifications, including the following admonition: "The fact that the photographs are shown to you

_____

[8]Ms. Davis was never able to pick petitioner from line-ups presented to her. A graphic display of the date and result of the photographic arrays presented the victims is found on p. 36 of petitioner's Memorandum of Law (#38).

should not influence your judgment.  You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not under any obligation to identify anyone." See, Respondent's Exhibit 120. However, the third array, which ultimately yielded a positive identification, had no such warning. Respondent's Exhibit 123. In addition, Mr. Cameron testified that at the time of the third "throw-down" he was under the impression that Detective Wright wanted him to "pick the guy out." Tr. 126.

The lack of admonition, coupled with Detective Wright's lack of training in conducting non-suggestive identifications, and Mr. Cameron's impression that he was expected to "pick the guy out' suggest improper influence and cast serious doubt on the reliability of the identification procedure. See, Petitioner's Exhibit 118, Affidavit of Ralph Haber Ph.D.

The November 17, 1998, identification is suspect for the additional reason that it was unnecessary.  Petitioner was already in jail awaiting trial  when the third identification procedure was undertaken. He had been indicted for the Cameron/Davis robbery more than 4 months before the third photographic array was utilized. Exhibit 103 at p. 4.   Thus, the "identification" was not for the purpose of investigation or identifying a suspect but arguably for the purpose of creating or bolstering evidence against petitioner.

Improper influence may be unintended, unconscious and

subtle. See, Exhibit 118. When the Cameron/Davis robbery was reported, the police had already identified petitioner and Honeycutt as the perpetrators of the Wilkes/DiFillippo incident. The same day that the Cameron/Davis robbery was reported, Detective Wright had been briefed on the Wilkes/DiFillippo case and he was able to get a copy of the photographic arrays from that case delivered to him while he was interviewing Mr. Cameron for the first time. Exhibit 149, p. 9-10. Once Ms. Davis identified Honeycutt as the female robber, the police understandably assumed that petitioner was the male participant in Cameron/Davis robbery. This assumption may have been conveyed to Mr. Cameron at the time of the November 17, 1998, "throw-down."

Under these circumstances, I find that competent counsel would have moved to suppress the evidence of Mr. Cameron's pre-trial identification of petitioner. If petitioner's pre-trial identification had been successfully challenged, the prosecution would only have been entitled to present petitioner's in-court identification by demonstrating through "clear and convincing evidence that the in-court identification [wa]s based upon observations of the suspect other than the lineup identification." U.S. v. Wade, 388 U.S. 218, 240 (1967); Tomlin v. Meyers, 30 F.3d 1235 (9th Cir. 1994).[9]  The other indices of reliability of Mr. Cameron's

_____

[9]Both Wade and Tomlin involved illegal or unduly suggestive "line-up" identifications rather than the photographic array procedure in this case. However, the same principles apply in

identification of petitioner are tenuous.

Petitioner did not closely match the description of the robber in the Cameron/Davis robbery. The day after the robbery, Detective Wright interviewed Mr. Cameron and Ms. Davis. Mr. Cameron described the robber as a white male, 5' 8" tall, weighing 170 lbs, with brown hair cut short and clean shaven. Ms. Davis described the male as 5' 8" to 5' 9" with a medium build and short dark hair (which she compared to Detective Wright's), and no beard or mustache.

At post-conviction, petitioner established that he weighed 200 pounds and was 6 feet tall. Mr. Heath is arguably not of "medium build." See, Respondent's Exhibit 127 (photograph from trial of petitioner and two sheriff's deputies). Moreover, when petitioner was arrested in New Mexico 20 days after the Cameron/Davis robbery, his hair was below his ears, not short like Detective Wright's. Compare, Respondent's Exhibit 123 (Petitioner lower right) with Respondent's Exhibit 129 (Detective Wright seated next to Honeycutt during trial).

Other factors, including the fact that the trailer where the robbery occurred was illuminated by a single 40 watt light bulb and that Mr. Cameron was not wearing his glasses during the incident, impaired his ability to see the male robber.

Two months after the robbery, Mr. Cameron's corrected vision was 20/40 in his best eye. He suffered from cataracts

---

either situation.

- which create particularly poor vision in low light conditions. Respondent's Exhibit 160 at p. 31 - 35. In addition, Mr. Cameron told Detective Wright that "as he was being beaten he couldn't get a good look at the suspect's face, and then his eyes swelled shut." Respondent's Exhibit 149 at p. 16; see also, Tr. 181.

Dr. Barringer's report in the post-conviction trial indicated that with Mr. Cameron's poor vision and cataracts, no glasses, and the poor illumination in the trailer, he could not have adequately perceived the details of a person's face. Respondent's Exhibit 137.

As noted by the court in Tomlin, "[w]hen faced with a client who has been identified in an illegal line-up, most defense attorneys would challenge the admission of any evidence related to it. After all, a defendant "arguably ... has everything to gain and nothing to lose by filing a motion to suppress," United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991), especially one involving an identification by the sole witness to the crime. Tomlin v. Meyers, 30 F.3d 1235, 1237 (9th Cir. 1994).

In this case, petitioner had everything to gain and nothing to lose by moving to suppress the evidence of Mr. Cameron's photo identification. Mr. Cameron was one of two eyewitnesses to the Cameron / Davis robbery and as discussed above Mr. Cameron's observations of his assailant were under circumstances that cast serious doubt on his ability to

observe and identify the robbers.[10]

If the evidence of Mr. Cameron's photo array identification and in-court identification of petitioner was suppressed, the only evidence of petitioner's identify by the prosecution would have been the victims' description of the robber which differed in material respects from petitioner's appearance.

Failure to adequately develop and present a defense that someone else committed the Cameron/Davis robbery: In addition to the issue of failing to move to suppress the photographic identification there is another issue of whether counsel was constitutionally ineffective for failing to investigate and present available evidence that the crime was committed by another. Avila v. Galaza, 297 F.3d 911 (9th Cir. 2002), cert. dismissed, 123 S.Ct. 1571 (2003). In this case, petitioner's counsel failed to develop and present evidence suggesting that James Foster may have been the male robber in the Cameron/Davis case.

After petitioner was arrested in New Mexico he was interviewed by Detective Wright. Wright testified that petitioner told him he wished to exchange information about methamphetamine dealing in Jackson County in exchange for dropping the charges against him. Tr. 201. When Detective

---

[10]In contrast, Ms.Davis, whose description of the perpetrator were consistent, whose statements were more cogent, and who had not been beaten and had an extended opportunity to observe the male perpetrator, never identified petitioner as a participant in the robbery.

Wright told petitioner that the charges would not be dealt away because Mr. Cameron had been beaten, petitioner responded that "he wasn't involved in that crime and that I might look for someone named Jimmy." Tr. 201-202, 207.

On May 22, 1998, (ie, before the Cameron/Davis robbery) Medford Police Officer Richard Renfro observed Neva Honeycutt and Jimmy Foster standing by an automobile which fit the description of the vehicle police had linked with the Wilkes/DiFillippo incident. Honeycutt fled, but Officer Renfro questioned Foster who acknowledged that the car belonged to him but denied involvement in the "Central Point" (ie, Wilkes/DiFillippo) incident and stated that he had just met Honeycutt that day. Subsequent investigation revealed that Foster had been in the area several times with Honeycutt and that they ere staying together at 408 1/2 Edwards St. Respondent's Exhibit 119, p. 3. A background check on Foster revealed that he was on felony probation for delivering methamphetamine.

At trial Officer Renfro testified about his May 22, 1998 encounter with Mr. Foster. Tr. 107 - 112. However, the facts that Foster lied to police about having met Honeycutt that day, when in truth they were staying together and that Foster was on felony probation were never known to petitioner's jury because petitioner's counsel did not question Officer Renfro about those facts or otherwise develop them.

In addition, petitioner's counsel failed to present

evidence that Foster matched the description of the male robber in the Cameron/Davis incident more closely than petitioner.    The description of his assailant given by Mr. Cameron the day after the robbery was of a white male, 5' 8", 170 lbs., brown hair.[11]

At trial, petitioner's counsel argued to the jury "there's no way you'll ever know what James Foster looks like." Tr. 274.    However, an Oregon Department of Motor Vehicles printout on James Leon Foster, produced as evidence in petitioner's PCR trial indicates that Foster's physical description is 5' 7", 185 lbs, brown hair. See, Respondent's Exhibit 119, p. 2.

In closing argument, petitioner's counsel questioned why Foster was not investigated and implied that Foster may have been the Cameron/Davis robber.    Had counsel established that Foster fit the physical description of the robber and that Foster had lied to the police about his relationship with Honeycutt, his argument to the jury would have been supported by meaningful evidence.    Moreover, if the evidence implicating Foster had been presented, petitioner's statement to Detective Wright that although he participated in the Wilkes/DiFillippo incident he was not involved in the Cameron/Davis robbery would have gained credibility.

3.) Failure to call an expert regarding eye witness

---

[11]As discussed above, this description did not closely fit petitioner.

identification:    Petitioner argues that counsel was ineffective for failing to call an expert on eye-witness identification.  Memorandum of Law (#38) p. 49.

At his PCR trial, petitioner presented the affidavit of Dr. Ralph Haber, a research scientist specializing in forensic identification science including eyewitness identification and memory.  See, Respondent's Exhibit 118.  Dr. Haber's 14 page affidavit is comprehensive in its treatment of the evidence at petitioner's trial and the psychological dynamics impacting the identification process.

As set forth in Dr. Haber's affidavit many of the factors that affect the reliability of eye-witness identification were present in petitioner's case.  The dynamics of how, and to what extent, these factors may influence a victim's later identification of a perpetrator are beyond lay knowledge.

Given the inherent problems with and substantial impact of eye-witness identification testimony, expert testimony concerning these matters may have prevented the jury from giving Mr. Cameron's testimony undue weight.

Standing alone, counsel's failure to present expert witness testimony concerning factors in petitioner's case that may have impacted Mr. Cameron's eye-witness testimony would not necessarily fall outside the "wide range of professionally competent assistance."  Strickland, 466 U,.S. at 690.  However, I find that the cumulative effect of this failure combined with the other factors discussed herein resulted in

deficient representation.

4.) Failure to call an expert regarding Mr. Cameron's impaired vision: Petitioner alleges: "Counsel failed to obtain and call an expert to testify how Mr. Cameron's impaired vision, the poor lighting conditions, and the facial injuries he sustained, would have impacted his ability to observe and identify his assailant." Memorandum of Law (#38), p. 53.

Mr. Cameron testified that he only needed his glasses for reading and that he can see better without his glasses than ... with them." Tr. 178 - 180.

At his post-conviction trial, petitioner submitted an affidavit from Dr. John Barringer, O.D., Exhibit 137, who reviewed the medical records relating to Mr. Cameron's injuries, which included records of an eye examination, Exhibit 133, as well as photographs and police reports describing Mr. Cameron's injuries and transcripts of Mr. Cameron's testimony. Exhibit 137 at p. 1.

Dr. Barringer noted that Mr. Cameron went to an eye doctor two months after the incident in order to get stronger prescription lenses. Respondent's Exhibit 137 at p. 3. Mr Cameron suffered from cataracts and his corrected vision was 20/40 in one eye and 20/50 in the other. Id. Although it was impossible to guess Mr. Cameron's uncorrected vision from the report, "[t]his man could not see better without his corrective lenses that he could with them and his vision would be substantially impaired without corrective lenses at close

range, midrange, and at a distance." _Id_. Dr. Barringer
concluded: "I do not believe the average person could
accurately see details of a person's face without corrective
lenses under the low light conditions described. Respondent's
Exhibit 137 at p. 3.

The reliability of Mr. Cameron's identification testimony
was extremely relevant to the "key issue" at trial and expert
testimony of the type set forth above would have been very
persuasive in attacking Mr. Cameron's identification of
petitioner as his assailant. I find that under these
circumstances, competent counsel would have investigated
Cameron's medical history and the lighting conditions in the
trailer, and offered expert testimony as to Cameron's ability
to see the male intruder.

5.) Failure to request jury instruction: The failure to seek
proper jury instructions has been held to constitute
ineffective assistance of counsel. _See_, _United States v._
_Span_, 75 F.3d 1383, 1389 (9th Cir. 1996).

A jury instruction cautioning juries about eye-witness
identification is proper "when the issue of identity is
crucial, _ie_. where no corroboration of the testimony exists,
or where the witness' memory has faded by the time of trial,
or where there was a limited opportunity for observation."
_United States v. Scott_, 578 F.2d 1186, 1191 (6th Cir.) _cert._
_denied_, 439 U.S. 876 (1978). Such instructions are commonly
referred to as "Telfaire" instructions, recommended by the

court in <u>United States v. Telfaire</u>, 469 F.2d 552, 558-59 (D.C.

Cir. 1978).

The Telfaire instruction explains that "you, the jury,

must be satisfied beyond a reasonable doubt of the accuracy of

the identification of the defendant before you may convict

him." 469 F.2d at 558. The instruction further informs the

jury that in evaluating eye-witness identification evidence it

should consider:

> "(1) the capacity and opportunity of the witness to
> observe reliably the offender; (2) the question whether the
> identification was the product of the witness' own
> recollection, in view of the strength of the identification
> and the circumstances under which it was made; (3) the
> inconsistent identifications made by the same witness; and (4)
> the credibility of the witness."

<u>United States v. Tipton</u>    , 11 F.3d 602 (6 <sup>th</sup> Cir. 1993)

(summarizing <u>Telfaire</u>).

In <u>State v. Calia</u>, 15 Or. App. 110, 114-115 (1974) the

Oregon Court of Appeals approved the following instruction.

> "In this case, there has been eyewitness identification
> of the defendant. When you consider the weight to be given to
> such testimony or the reliability of such evidence, you should
> consider the familiarity of the witness with the defendant,
> the opportunity the witness had to make an identification,
> taking into consideration such matters as time, height,
> movement, the number of persons present and the excitement
> attending the event or the occasion, the susceptibility of the
> witness through suggestion of others or groups, and the period
> of time that elapsed between the initial observation and the
> final observation."

Given the eye-witness identification issues discussed

above, petitioner's counsel clearly  should have requested

that the jury be provided cautionary instructions on

evaluating eye-witness identification evidence similar to the

instructions in  <u>Telfaire</u> and <u>Calia</u>.

<u>Failing to object to the prosecutor's closing argument:</u>

Petitioner alleges that counsel was deficient in failing to object to the prosecutor's closing argument which invited the jury to  consider  the  two  cases  and  the  two  defendants together.[12]

A failure to object to a prosecutor's improper argument may constitute ineffective assistance of counsel under the Sixth Amendment.  <u>See</u>, <u>Freeman v. Class</u>, 95 F.3d 639 (8th Cir. 1996).

Petitioner  acknowledges  that  "not  interrupting  a prosecutor's closing argument will often constitute a valid tactical decision," Argument in Surreply (#43), p. 12, and that "[I]n a majority of cases where a prosecutor makes an improper  closing  argument,  other  circumstances  exist  that obviate the violation."  Memorandum of Law (#38) p. 57.

In <u>Drayden v. White</u>, 232 F.3d 704 (9th Cir. 2000) the Ninth  Circuit  identified  the  following  "buffering" circumstances: 1.) the weight of the evidence against a petitioner; 2.) whether the jury was given a proper limiting instruction; and 3.) whether the prosecutor mis-stated the evidence.

The  evidence  that  petitioner  participated  in  the

_____

[12]The prosecutor began his closing argument by urging the jury to consider "[Are] these people responsible?" Tr. p. 238 and ended his rebuttal by arguing that the jury could consider the two incidents "together." Tr. p. 297.  <u>See also</u>, Tr. 264 and 266 (argument linking consideration of the two cases and defendants).

Cameron/Davis robbery was not strong. As discussed above, the evidence against petitioner was based on the dubious identification of petitioner by a witness with impaired vision who had been presented with suggestive photo throw-downs prior to making his selection after the third exposure to petitioner in the photo arrays.

Moreover, counsel failed to request a jury instruction cautioning the jury against co-mingling the evidence in the two cases against the two defendants. Finally, the prosecutor's statement that "[Y]ou can treat (the cases) together" was contrary to Oregon law as set forth in the pattern jury instruction discussed below.

Thus, the circumstances that may obviate the prejudice from an improper argument do not exist in this case and counsel should have objected to the prosecutor's arguments regarding considering the cases and defendants "together."

The prejudice arising from the prosecutor's improper argument was compounded by counsel's failure to request a jury instruction instructing the jury to consider both the discrete cases and the co-defendants separately.

Oregon has the following pattern jury instruction concerning co-defendants:

Although the defendants are being tried together, you must consider the case against each separately. In doing so, you must decide what the evidence shows as to each defendant, without considering any evidence that may have been received solely against some other defendant or defendants. Each defendant is entitled to have the case decided on the evidence and on the law applicable to that defendant.

29 - FINDINGS AND RECOMMENDATION

Oregon U.Cr.J.I. 1059[13]

Under the circumstances of this case, counsel should have requested that this jury instruction be given.

In addition, given the facts of the trial and the identity issue in the Cameron/Davis case, counsel should have submitted a special instruction tailored to advise the jury to consider the evidence of identity separately as to each defendant and as to each case. Such a cautionary instruction was necessary to effective representation given the joinder of the charges which counsel failed to oppose and the argument of the prosecutor, to which counsel did not object.

Conclusion: The Supreme Court has held that "a single serious error may support a claim of ineffective assistance of counsel" - including counsel's failure to file a motion to suppress. Kimmelman v. Morrison, 477 U.S. 365, 383 (1986). In this case counsel's failure to move to suppress Mr. Cameron's identification of petitioner as the male participant in the Cameron/Davis robbery was such a "serious error" which fell below an objective standard of reasonableness.

In addition, I find that the PRC court finding that Mr. Cameron's eyesight was "20/40" which did not "necessarily" impair his ability to identify the suspect, Exhibit 160 Tr. at

---

[13]At the time petitioner was convicted, Oregon had an identical pattern instruction, although at that time, it was number 1057. See, Exhibit 162 at p. 47.

77, was an unreasonable determination of the facts.[14]

Therefore, I find that the state court decision denying petitioner's Sixth Amendment claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and involved an objectively unreasonable application of the <u>Strickland</u> standard.

I find that counsel's representation of petitioner was constitutionally deficient under the <u>Strickland</u> standard in that he failed to adequately distinguish petitioner's acknowledged involvement in the Wilkes/DiFillippo incident from petitioner's alleged involvement in the Cameron/Davis robbery. The cumulative effect of counsel's acts and omissions with respect to the identification issues coupled with his failure to adequately distinguish the incidents in the minds of the jury compounded to result in a situation where but for counsel's errors the result of the trial may well have been different.

Based on all of the foregoing, Petitioner Petition (#2) should be allowed with respect to his convictions in Case No. 983474-A-FE.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice

_____

[14]The post-conviction record establishes that Mr. Cameron's **corrected** vision was 20/40 in his best eye and that his ability to see would have been impaired under the conditions present. Respondent's Exhibit 137 at p. 3.

of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
Procedure, should not be filed until entry of the district
court's judgment or appealable order. The parties shall have
ten days from the date of service of a copy of this
recommendation within which to file specific written
objections. Failure to timely file objections to any factual
determinations of the Magistrate Judge will be considered a
waiver of a party's right to de novo consideration of the
factual issue and will constitute a waiver of a party's right
to appellate review of the findings of fact in an order or
judgment entered pursuant to the Magistrate Judges's
recommendation.

DATED this 17th day of November, 2009.

_____
Thomas M. Coffin
United States Magistrate Judge